All right, we're prepared to hear argument in the first case this afternoon, the case of SB v. Board of Education of Harford County. Please. May I please the court? Counsel. I'm here on behalf of SB, a student with the Board of Education at Hartford County with my counsel, Tracy Rizvani, for allegations he was a victim of bullying and harassment, creating a hostile educational environment. We pled a cause of action pursuant to Section 504 of the Rehabilitation Act of 1973 and the standards of review in that case regarding hostile education environment or Davis v. Monroe and its progeny. We also made allegations, separate and apart from the above, that the school's acts and omissions, very, very similar to the ones that are part of the first cause of action, likewise rise to the level of a gross mismanagement or a gross misjudgment of the child's educational plan. And in this particular case, the facts also give rise to what's called a gross deviation from professional standards of care. There we find the analysis going back all the way to 1982 in a case called Youngberg v. Romeo, also Monaghan v. Nebraska, and in this circuit, Sellers, which talk about a gross deviation from professional standards of care. Third and separate and apart from those two, Section 504 causes of action is one that we brought forth on behalf of his stepfather, TL. And this, we believe, actually is an issue of first impression for this court. And I can't promise that, but it looks like it is. But in any case, it's one of great importance and public policy implications for this circuit because it relates to the issue of what are the standards for retaliation for a claim when the person is advocating on behalf of their child and they also are an employee of the school district. But you have to have some evidence there was an advocation on behalf of the child, and what is that evidence? Well, there's actually a lot of advocacy on behalf of the child. One particular thing that stands out, there was a public meeting that our client TL, Tim, attended, and he spoke out very, very vociferously on behalf of issues related to bullying and harassment in the school in general and as to his stepson in particular. And so that is one particular issue where he spoke out very, very publicly and advocated on behalf of his child. When did that happen? If I have to go back to the specific date, Your Honor, I'm going to argue one thing. You've got to tie that up with the fact that there's a retaliation. I understand. The chief reason that this is not before us, at least in terms from the district court, is that there was no evidence of this advocacy. That's correct. And obviously we believe that there's a significant amount of evidence because you can tell. You need to tell me what that evidence is. Well, there's one, but I want to make sure there's a temporalness there. That was the key term I was just going to speak to, Your Honor, was the temporal proximity between the two. Also, there was another session called a – it was a disciplinary session for the young man called an MDR. And at that particular program, he also argued on behalf of his son regarding an issue regarding advocacy against bullying and harassment in the community. There were also e-mails that are replete throughout the record that show that the school district clearly not only was on notice that he was arguing and advocating on behalf of his son. And, in fact, I would almost say if we go back into the record, I don't think the school district has ever alleged he was not advocating on behalf of his son, Your Honor, in due respect. Of all the issues we've got, we've got a lot of issues here. I think the one that the school district has never argued was that he was not advocating on behalf of his son. So respectfully, I would say we've both proven that and they've waived it. I think the temporal proximity one is the one I'd also like to speak to. Why don't you go ahead and move to the ones on the other claims, and then we'll deal with that after. Okay. As you ask me that, does anyone have any specific questions they would like me to address before I – Oh, no, you need to move forward. Okay, well, I will. I'm already five minutes in, almost six. It's a large record. There's lots of issues to speak to. Some of the issues are related to evidentiary issues. Part of it is to understand we have that record, too. I know. We have those briefs, so you don't have to go through everything in there. You don't have to repeat what you have before. Okay. Well, I'll do my best. In regard to the first claim, it was a hostile education environment. It relates back to the issue that the child had a disability, which seems to be uncontroverted. Was he bullied and harassed because of that disability? There's argument that he was not. Was the school on notice that he was bullied and harassed? Well, clearly the school was on notice. They admit that. Can I ask you just a quick question as you go through those problems? Yes, Your Honor. Does the school have to be on notice not just that he was being bullied and harassed but that he was being bullied and harassed on account of his disability? The fair answer to that is yes and no because part of the problem that relates now to the deliberate indifference issue is the duties that school districts have to investigate allegations. When children are bullied and harassed, particularly in relation to disability, nobody's going to come forward and say, Oh, I bullied and harassed Johnny because he had polio. No, but Johnny's supposed to come forward and say, I'm being bullied and harassed because of my disability. Well, he's supposed to come forward and say he was bullied and harassed. Unlike adults in an employment section where the adult has to say, Listen, I need a 504 and accommodation. The child's duty or the family's duty is to come forward, put the school on notice that he or she is being bullied or harassed, and then the school has the duty to investigate those claims and to find out what is causing those issues. I just want to be really clear on this because I was confused about it just in the briefs. So your position is not that the school district actually knew about bullying based on disability. Your position is that they knew about bullying, and at that point it was their obligation to figure out whether or not it was based on disability. Actually, they did know, and they were on notice, that he was being bullied and harassed because of disability. In fact, there were two instances that we spoke to where teachers brought up issues in class. One was the teacher brought up in front of all the other students in class, Have you taken your medication today?, which clearly raises an inference that when kids thereafter bullied him, they did it because they knew he had a disability. Another teacher, let me back up a little bit. One of the other issues that occurred is that because he was a special education student, he got many accommodations in the classroom. He had a scribe that would help him write things out. He was able to be given more time to be able to complete some of his assignments. He was able to leave class early. He had a number of accommodations that were observable and obvious to other students. So when he was bullied and harassed, and he was called special ed, and he was called retard, and he was called other names that relate back to his disability, then clearly those things, we believe, create an inference that the bullying and harassment was based upon the disability. It's not just speculative. And that the school had actual knowledge, not just of the bullying, but what it was based on. Well, there are incidents in the record that I might have to come back later and point out specifically either in my rebuttal or with court's permission, even a letter brief, to say these are specific times that the school district knew. The school district did know that he was bullied and harassed because of his disability, without a doubt. The question, that related question, is once they knew that, were they deliberately indifferent? What did they do and what did they not do? For a significant period of the time, they did nothing. The school district failed to keep any records as to whether or not the child was being bullied and harassed. The only records they kept were on perpetrators. For a significant period of time, they did nothing. And nor do they even say that they did. This young man was getting harassed at school. He was getting beat up outside of school. There were reports to the police. The same kids that were bullying him outside of school were bullying him in school. And nothing happened. Well, a lot of those instances, the school did not even, was not even aware of them. He was getting beat up outside of school. What was the school's obligation? That's a very good question, Your Honor. One of the issues that came up is like if something occurs off-campus, there is no duty for the school district to do anything to the children for things that occur off-campus, granted. But they were on notice as to the incidents that had occurred off-campus because the parents told them. And there were police reports. The issue becomes that ties it together whether the same kids doing it, and the answer is yes, it was. So I think that's the answer there. There's no duty necessarily to investigate what happened outside of school. But once that comes back into school, clearly there's a duty to investigate it and address the bullying and harassment. Your opposing counsel is probably going to stand up and tell us that in every instance that you made some allegation of bullying, the school board investigated it and responded to it. They did. They did. The issue becomes what is the response? What's a reasonable response? An investigation by itself is really doesn't have any basis to it. The issue is now what? Let me get that point established so when I hear that, that something more is going to come. Yes, sir. You are conceding that this board in fact responded to every one of the bullying allegations and conducted a further investigation. Let me be clear. But it was inadequate in your view. Up to a point, they did no investigations. At a certain point, they did investigations, absolutely. I need to know where they didn't know it. What do you say they did no investigation on it? I will have to give you the exact dates of that in my rebuttal, Your Honor. I don't need the dates. I need the incident because you're trying to establish. You heard Judge Harris' question. You said they didn't need to have action on us, but you said they actually did respond. They investigated, but it wasn't adequate, and then you say there was no investigation. This child had been bullied and harassed since middle school. When he got to high school, he was bullied and harassed. You don't get to say he is someone who's just been bullied and harassed. What you get is you get an opportunity to identify where it was he was bullied and harassed, where the school then, with knowledge or whatever, acted with some type of indifference upon knowing or having something that they should have known, I guess, by, even we take that standing, and didn't do anything. You don't get to say he was just bullied and harassed and he was pushed aside when you're talking about the school board because they have specific responsibilities, and they can't be with him 24-7, but they can't. They must respond to that that is before them without deliberate indifference. The first part of my response is the record is replete with incidents of bullying and harassment where there was no response, replete with it. Then at a certain point, the school district did get involved, and once there were incidents reported to them, they did investigate every incident. When you say replete, you mean your allegations, the specific ones that you allege, not a phishing expedition once you make your allegations you didn't find it, but you specifically allege those. Correct. And those allegations are replete for us, and the opposing counsel is going to get up and say, oh, you must be correct because I know you guys are not going to disagree on that because it's right in front of us. The summary judgment evidence shows that this young man was bullied and harassed and reported it for a significant period of time and nothing was done. After a period of time, the school district did begin to investigate the claims, and then thereafter the argument is that all they did was really punish people, that they didn't follow any of the standards of care set forth by the Office of Civil Rights, Department of Justice, their own school board policies, professional standards of care, and we have an expert report and they have none. What should they have done? I understand there are policies, but tell me what it is you're seeing the board fail to do. Well, when dealing with a child with special education, one of the things you're supposed to do is to provide psychological services to that child. You're supposed to provide counseling services to the child. You're supposed to provide social skills training to the child. You're supposed to follow the child and assess how well or how poorly the intervention at the school has provided, how effective it is. So you're saying their response was inadequate. That's correct, Your Honor. And they should have done more. Correct, Your Honor. But you also say, I do want to be as clear about this as I can, you also say that in the record I'm going to find both the allegation and then something to substantiate it, that there were some times when a report was made to the school board and the school board did literally nothing. I don't care. Put it aside. And you're saying I'm going to find that in here because I looked and I couldn't find it. But maybe on rebuttal you can tell me where I should look. I will, Your Honor. We have about three and a half minutes left. And one of the things that we also have talked about. Before you go, I want to make sure this is important. Please, Your Honor. Understanding your case. Do you agree that the standard in this case is deliberate indifference, is not reasonableness? No. The standard under a hostile. You conceded it in your brief. Well, let me be clear then and enunciate the distinctions that under Section 504. Deliberate indifference and what? And a gross deviation from professional standards of care. Under Section 504, there's a cause of action based upon hostile education environment. That follows a deliberate indifference standard in Davis and its progeny. Under Section 504, also, there's a gross deviation from professional standards of care. That follows Youngberg v. Romeo, Monaghan v. Nebraska and Sellers and has been adopted by this court. And then last is this other retaliation claim, which is Section 504. It's not so hard for courts to make these distinctions, Your Honor. We see that in the 14th Amendment all the time. There's a due process claim. There's a substantive due process claim. Based upon scrutiny, there may be a reasonable or rational standard. There may be an intermediate standard. So Section 504 has different types of causes of action, and each one has a different standard, and one of which is deliberate indifference. I'm sorry because you just totally lost me, but it's probably my fault that I'm not following this. So you're saying that when the claim is that the school allowed student-on-student harassment to proceed, that's covered by the deliberate indifference Davis standard? When it creates a hostile education environment to the child, the answer would be yes. It follows Davis, S.S. v. Kentucky, and other cases. And what's the claim that you raised that's not covered by Davis under 504? It's what's called a gross deviation from professional standards of care. That goes all the way back to Youngberg v. Romeo in 1982 case. And it's been accepted by this circuit and circuits across the country. Why is that one not covered by Davis? I don't understand. Because it's a totally different type of analysis. It doesn't rely on student-on-student harassment? That's not part of the claim? It relates to what the professional should or should not do. Then that's covered by Davis, isn't it? I mean, that's the whole point of Davis, that when it comes to student-on-student harassment, the response to that is covered by this deliberate indifference standard. They may be somewhat alternate sides of the same coin, Your Honor, but the case law does, in fact, make a distinction between them. Yes, the case law makes a distinction. Yes. Okay. All right. You've used up your time. You've eaten into the additional time, too. But you can use it like you like. Well, no, no. We'll say whatever we have left for rebuttal. All right. Thank you so much. Good afternoon. May it please the Court. Andrew Scott on behalf of the Board of Education of Harper County. Before I get into my argument, I'd like to respond to some of Appellant Counsel's points and to some of your questions. I already invited you to do that. Absolutely, Your Honor. First things first, the deliberate indifference standard absolutely does apply in this case. It applies to student-on-student harassment. Gebzer makes that clear in the Title IX context. What about the distinction he just made with Judge Harris? So the Sellers case, a published opinion of this Court, does set forth a bad faith-slash-gross misjudgment standard, but that is in the denial of a provision of a free, appropriate public education, or FAPE, context. When you look at Sellers and every other case cited in Appellant's briefs, and the amicus brief as well, they are all 504-slash-IDEA cases, individuals with disabilities in the Education Act cases. They all deal with failure to diagnose, failure to provide special education services. They do not deal with student-on-student harassment. And I think that's the clear distinction that has to be made in this case. Granted, it's not been clearly delineated in a published opinion of this Court, but I think it's clear every court of appeals that's considered the issue has held that the Davis standard applies to student-on-student harassment. There was no failure to provide a FAPE in this case. We argued below, and we argue again here, that if there was such a claim, those claims have to be exhausted administratively under the IDEA. And the record is undisputed that the appellants did not exhaust their administrative remedies, which is essentially why this claim should not be before the Court. Essentially, all there is is a student-on-student harassment claim. Getting to Judge Wynn's point earlier, I think the record is absolutely clear that the school system responded to each and every report of alleged harassment or bullying that was brought to its attention. This also gets to Judge Biggs' point. There were at least two incidents off campus that appellants provided evidence that existed, but there's absolutely no allegation or evidence that they were ever brought to the attention of the school system. There was an allegation that one of those instances was brought to the attention of the police officer who worked for Aberdeen, the city of Aberdeen, who also was assigned to the school as a school resource officer, but that police officer was not a school board employee. There was no allegation, much less evidence, that that police officer reported those incidents off campus to anyone at the school. What about the fact that they say your response was inadequate? Well, that's not the standard, Your Honor. And I think you were getting at that with your question. The Davis standard is very clear that the effectiveness is not the standard. Remedying the harassment or preventing harassment is not the standard. The courts have held that deliberate indifference doesn't exist, even where a singular student harasses another student for up to two years in some of the cases cited in our brief. Getting to the allegation or the argument this morning that the school did nothing for a period of time, and Judge Harris, you mentioned that you couldn't find it in the records, because it doesn't exist in the record. I think appellants' counsel is referring to incidents that happened before 2010. We argued in our initial motion to dismiss in this case that those incidents were time-barred. Judge Moss agreed in his September 2013 order, granting our motion to dismiss in part, and appellants thereafter conceded the point. If you look at there, and this is mentioned in our brief, when appellants filed their second amended complaint, they listed all these incidents that allegedly happened in elementary school and middle school. Counsel for the board said, why are you bringing this up in light of Judge Moss's ruling? They responded saying, we don't intend to base our claims on these allegations. We're just pleading them for quote-unquote flavor. And they agreed to drop a footnote, which appears in the record in the second amended complaint, where they basically said that they were alleging these previous incidents not in contradiction to Judge Moss's ruling, which is docket entry 35 in this case. So essentially, appellants' counsel has waived that point. There is no evidence before the court of any incidents that happened before 2010. Every incident after that that was reported to the school system was investigated. Students who were found to be culpable were disciplined. Everything up to a verbal warning to extended suspension, depending on the severity of the offense and the record, so to speak, of the alleged offender. What's your position on whether or not they have satisfied whether or not, if there is harassment, it was based on his disability? Absolutely. I think the standard clearly is under Section 504 that the harassment has to be based solely on the student's disability. The statute itself says that. The cases draw a distinction between Section 504 and its cousin, so to speak, the Americans with Disabilities Act, which is a more lenient standard, which allows for a mixed motive type of analysis. Section 504 clearly requires that the harassment be based solely on the student's disability. And that's the main reason why this claim fails, why the student's 504 claim fails, because SB himself at his deposition admitted that the harassment was not based on his disability, but in fact it was based on his race primarily. He testified that it was difficult being, quote, unquote, a geeky white metalhead in the high school that he attended and that his other fellow students couldn't see past the color of his skin. His therapist testified under oath, and her deposition notes, all of which is in the record, testified that the depression and anxiety that she diagnosed him with was based on a number of things, none of which were based on his harassment based on alleged disability. They were based on typical peer-to-peer relational issues, both romantic and otherwise. SB's relationship with his father, who left the family earlier in his life, these were things that contributed to his depression. And by the way, he didn't start seeing his therapist until six months after this lawsuit was filed. I think that's very important to note. And his therapist, of course, as is indicated in the brief, never prescribed him medication or referred him to a psychiatrist to be prescribed medication. He never had suicidal ideation. Therapy was concluded in six months at the time that SB graduated high school because both parties concluded that it wasn't necessary anymore. She never, the therapist never referred him for hospitalization. Again, the standard as to whether or not the school system should have done more, I think that's the crux of this case. SB's parents didn't approve of the way the school system was handling his alleged harassment, and that's simply not the standard. This court last year in Dover's Board of Education of Prince George's County specifically rejected that theory where the appellants in a Title IX claim basically argued that the school system should have done more, they should have investigated more, they would have found out why this student was being sexually harassed in violation of Title IX. And this court, in rejecting that argument, said, we cannot accept this theory because we would have to substitute a negligence standard for the deliberate indifference standard. And that's essentially what appellants are arguing here. They're trying to lower the deliberate indifference standard to a negligence or tort-like standard. Well, we dealt with retaliation. Talk to me about the retaliation claim. The retaliation claim, appellants' counsel is correct that we did not focus in our summary judgment motion on whether or not there was advocacy, getting to Judge Winn's point. We focused exclusively on the fact that TL, the stepfather who was also an employee, did not suffer an adverse employment action. Therefore, there could be no causal connection between any retaliation and any protected activity. The retaliation claim is based on three discrete incidents. One is TL having his practicum canceled at his school site. But it's undisputed that that practicum was a component of TL's graduate school program off campus. It was not in any way related to his position as a physical education teacher or athletic director at the school. And that in any event, he completed the practicum with the athletic director for the entire county, which is a position to which he aspires. He testified at his deposition. And that he received credit by the school system for having completed his practicum, for having completed the underlying graduate credits. He received two raises. He still has his job. He testified under oath that he participated in things with the countywide athletic director that were essential to that position, which is a position that he aspires to. What about the summer position? The summer position is an extra duty position. It's not part of his contractual duties. That was a position that was assigned each and every year. The record is clear that Mr. O'Brien, the principal at that school, came on board at Aberdeen High School in the 2011-2012 school year. And he testified that during his first school year, as most principals do, they don't like to rock the boat too much because they're not familiar with the surroundings. He didn't make any decisions or didn't make any changes with regard to the assignments for that position. The following summer, however, when he was faced with nearly 80 students, I believe 70 or 80 students, wanting to or signing up for this summertime physical education class, he decided that it was necessary, since 30 of them were females, that it would be wise to have a female employee, which is a bona fide occupational requirement for that position, because it would enable them to use locker rooms and the restrooms. And I think it's important to note this is not a typical physical education course. This is a summertime, six-hour-per-day summer education course that was for AP students and those who didn't wish to take physical education during the traditional school year, so they would take it over the summertime. I feel like we've blurred over now into whether there was a justification, you know, the whole pretext question. But just on the question of whether there was an adverse employment action, I mean, do you have to have a contractual right to a job for it to be an adverse action to lose it? I believe so, Your Honor. So any employee who's, like, an employee at will, just fire them, and that's fine. It's not retaliation because they didn't have a right to continue working? Well, to the extent that an adverse employment action has to affect the terms and conditions of the employees. I mean, he'd been doing this job, and didn't he? Am I wrong about this? I thought he got an e-mail in February saying he's got the position, in February 2013 saying you've got the position for this summer. And then he files a lawsuit, and then 20 days later, like, no, never mind, you don't have the job anymore. Your view is that if he did not have a contractual right to continue working in that job. So, I mean, does it follow, then, that anyone who is an employee at will can be fired because they took protected action, because they had no contractual right to keep that job? Well, he wasn't fired. That's, I think, the crucial point here. I understand, but I'm asking you, I guess, a hypothetical. Does it follow from what you are saying that if you do not have a contractual right to continue working, then you can be let go because you engaged in protected activity? Because what's your contractual right to work? Well, I would say that the answer to that is no, that our position is that he wasn't not awarded that position because of any protected activity. I know, I know. I guess I'm trying, how much emphasis do you really want us to put on this idea that he did not have a contractual right? I think it's crucial. I think it's crucial. And I think it's worth noting that if we do get to the pretext issue, even if he could establish that he suffered an adverse employment action, the board has put forth a legitimate non-discriminatory reason for selecting a woman in his place for that one summer. Didn't they hire two people, a woman and a man? Yes. So why didn't they hire him as the man? Because the man, the other man, Mr. Buston, had more seniority as a physical education teacher. They may raise on rebuttal that that's a disputed fact, but it is not. T.L. had been an employee of the school system longer, but he had not been a physical education teacher longer. But as I was going to get to, the issue, even if they were to be able to establish an adverse employment action, in light of the board's proffered reason for that, T.L. would have to prove that the retaliation was, he would have to prove but-for causation, essentially, in light of Section 504. Before we move on to causation, though, isn't there a case Burlington v. White? Doesn't it say that an adverse action need not affect the terms and conditions of employment? Correct, but the standard under Burlington is whether an average employee or a reasonable employee would feel comfortable complaining about the alleged retaliation. And T.L. did complain about not receiving the position, but he- That's after the fact. Like, will the next employee feel? Like, obviously, the first employee doesn't think he's going to be illegally retaliated against, but if that's the standard, why is the next person going to feel comfortable complaining if they know you might lose your summer job? Well, he had the opportunity to appeal administratively, and he chose not to. That position is available to every employee, and they would have had a neutral body, the Board of Education, who could have reinstated him on that position. All right, let's do causation. Essentially, yes. As to the issue of whether the board was on notice that the harassment was based on disability, appellant's counsel mentioned certain phrases. He used the phrases retard, special ed. There's no evidence in the record that that was ever brought to the school system's attention. We have three years of complaints in the record by SB, by his mother, AL. None of them refer to any phrases like that. And I'll leave it at that. As to under the deliberate indifference standard, appellants are required to prove that the harassment was sufficiently severe or pervasive, and I would submit that it was not. Judge Motz was correct in concluding that it was not. And I think it's crucial to keep in mind that the Supreme Court has acknowledged, as it's characterized in the Davis case, the dizzying arrays of immature behaviors by students that would be utterly inappropriate in the adult context, in the adult workplace, for example. And we have to take that into consideration and look at more objective factors as to whether or not the student is suffering from a severe or pervasive harassment environment. And so we look at dropping grades, for example, whether the student's homebound or hospitalized, whether the student's subjected to physical violence. None of that is in the record here. SB's grades actually increased over the period of time that we're looking at. He graduated on time with excess credits on the honor roll. He was never homebound. He was never hospitalized. The allegations of physical violence are largely constrained to those off-campus incidents that were never reported to the school system's attention. And getting back to the deliberate indifference standard, I think it's crucial, again, to emphasize that this Court has acknowledged, and other courts, the First Circuit, for example, has acknowledged that it's not an effectiveness standard. The Eleventh Circuit, for example, case where the student committed suicide, the school system nevertheless considered or concluded that there was no deliberate indifference because the school system had responded to each and every incident. And I think it's important to realize that each of these prongs has to be analyzed separately. When you read the cases, many of them will conclude that, for example, the harassment was sufficiently severe or pervasive, but nevertheless the school system wasn't deliberately indifferent, and therefore the claim fails. Can I just, on deliberate indifference, to come out your way, I just want to make sure I'm right about this. We don't have to hold that it is enough simply for the school district to have responded, no matter how ineffectively. Because I am concerned. There are plenty of courts who have said, look, you can respond to every isolated incident, but at some point, if the harassment is still going on, it is, even under the deliberate indifference prong or standard, it is incumbent on the school district to re-evaluate its response if it's just not working. So we don't have to reject that proposition for you to win. I would agree. And I would also, I think the case that you're probably referring to is the Patterson case, upon which they refer heavily. The Patterson case had a very vigorous dissent where the dissenting judge basically said that the majority... Let's put to one side how Patterson... So fine, you think Patterson is wrongly decided. Assume hypothetically I think it's rightly decided. Can I still come out your way? Yes. And I think, also, I think it's important, given the time, to note that the standard of care, as Appellant's counsel put it, is irrelevant to this case. OCR's guidance in this Office of Civil Rights guidance is not relevant in a student-on-student harassment case. The Supreme Court in Gebser made that very clear, and we block quote that in our brief toward the end, where they say we have never held that failure to abide by non-regulatory guidance can support a claim for damages under spending clause legislation, such as, in that case, Title IX, in this case, Section 504. Tell me just, for my comfort, tell me why your case is not Patterson. Why, if I am worried about a case in which a school board, every time it happens, they give the kids some slap on the wrist, and so a new kid does it the next day, and the next day it's a different kid. It's like whack-a-mole. You just, as long as you're just slapping wrists, there's always going to be another kid. Tell me why this isn't that case. Well, because two reasons. First, Judge Williams in the Doe v. Board of Prince George's County last year, which was affirmed by this court, basically said to adopt that kind of a standard would invite an avalanche of litigation. And I know that's a cliché. Tell me, just tell me why, assuming hypothetically that where I am on the law is that repeated wrist slaps at some point are no longer an adequate response, even under the deliberate indifference standard. Please tell me why that's not what happened in this case, just as a factual matter. Because I don't know exactly where to look. Absolutely, it did not happen in this case as a factual matter. If you look at the incidents, the alleged incidents over a three-year span, you see that they actually decrease in alleged severity. The number of reports that were found to be completely unfounded increases to the point where, towards the end of Espy's high school career, one incident, for example, where he alleges that several African-American girls harassed him in a stairwell, when the principal immediately investigated that and interviewed Espy's best friend and girlfriend who were present, both of them rejected Espy's theory of what happened and basically said it didn't happen the way Espy said it happened. The school system responded every single time, regardless of whether the number of unsubstantiated allegations continued, which I think demonstrates its good faith in this case, that it continued to take the allegations seriously. And, in fact, AL, towards the end of Espy's career, emails the assistant principal who was assigned to deal with Espy's disciplinary matters and praises him consistently for his efforts in responding to their concerns. That's consistent. I'll give you sites if I can bear with me one moment. That's okay. I just wanted to get a sense of how you were seeing the factual record. I'm sorry? I'm sorry. I just wanted to get a sense of how you were kind of seeing the factual record. Right, so as this case is concerned, I think that concern is not relevant. Lastly, to the extent that appellants argue that the school board didn't follow its own policies, this court rejected that theory in the Doe case last year where the Board of Education of Prince George's County didn't follow its sexual harassment policy to the letter and the district court and this court affirmed summary judgment on the theory that that's not the standard. Just as OCR guidance is not the standard, school boards are not held to have to follow their own policies to the letter. Thank you for your time. Thank you. Thank you. It's an honor being here. Thank you. A couple of things I want to underscore. In Youngberg v. Romeo, 1982, the Supreme Court specifically dealt with issue of the standard related to professional standards of care, gross deviation from professional standards of care, and in their analysis at the time, the previous circuit had relied upon Estelle v. Gamble, which was an Eighth Amendment prison case, that had adopted the deliberate indifference standard, and the Supreme Court in Romeo case, Youngberg v. Romeo, specifically rejected deliberate indifference in relation to professional standards of care. So as far as I can see, that issue is settled, point one. Point two, they talked about the Doe case. The Doe case turned on lack of knowledge. In this case, there's no question about notice. So to the extent that they want to rely upon Doe, I don't think it's really applicable in this particular case. An issue about exhaustion. That was pled early on in the motion to dismiss, and it was not granted. They pled it again in the motion for summary judgment. It was not granted. We can infer quite easily from what the judge has said that we did not need to exhaust claims in that case. But even if this Court wants to revisit that issue, one of the reasons you go through exhaustion is to bring claims before a hearing officer and develop a record. Here we have a record. So there's really no reason to go back and exhaust claims. And that's on top of the various issues we've already briefed regarding futility, regarding no need to exhaust when you're dealing with, as we did early on, asking for various kinds of injunctive and declaratory relief, or particularly in relation to TL's claims. The issue of reliance upon guidelines, whether they be from Office of Civil Rights, whether they be from the State of Missouri, whether they be the school board's own standards. They are correct, and the intervener, the National Association of School Boards, are correct when they say we should not rely upon those things. They didn't add this word. I'm going to add the word solely. Because if you only rely upon Office of Civil Rights standards, if you only rely upon school board standards, or you only rely upon the standards and they don't follow that one thing, then granted that may not rise to the level of deliberate indifference. But if you add those things on top of each other, and they don't follow OCR, and they don't follow school boards, and they don't follow state law, and they don't follow case law, then when you add all those things together, and Davis uses the term constellation, if you look at all those things together, then in fact they could, in constellation together, rise to the level of deliberate indifference. While arguably alone they would not, and I would agree to that. Can I ask you a question about your retaliation claim? Please. So in thinking about causation and retaliation, so it's 20 days after S.B.'s lawsuit is filed that the principal sends the email saying that T.L. doesn't get the summer job. Is that right? That's correct, Your Honor. And so are you pointing to the filing of the lawsuit as one instance of protected activity? Does that count as protected activity? That certainly would be. And in fact, the answer is yes to that. And that lawsuit was filed on behalf of S.B., but by his stepfather was involved in that litigation? That's correct. Let me bring up something else that was intimated in the discussion and was brought forward by counsel, in my opinion, is the issue about the adverse employment effect on him, which was the question that you brought forward early on. While it's important, I believe the reason that we have a law in place so that people who bring forward advocacy on behalf of the children in school or employees for adults is protected. So what I'm saying is the weight should go on the fact that the school's acts and omissions intend to chill that right to argue. We haven't made a First Amendment right, but you also have it under the First Amendment not to retaliate, the ability to go speak to the government and say, I've got a complaint, and not be retaliated against. So I think as you go back and look at this case and look at the record, once we believe we have been able to show that Tim did experience adverse employment actions and conditions, but more importantly the intent of the school, and the record's replete with things they said and did after the lawsuit was filed and after he advocated on behalf of his child, was to chill his speech. So I think the more relevant issue is did what occurred chill his speech as much as what occurred affect his employment, Your Honor? I have a minute left. Do we have any other questions? All right. Well, thank you for your argument. One quick thing. There are points in the – Can I hear from your other counsel too? Yes, absolutely, Your Honor. Forgive me then. Thank you very much. Thank you. We had three evidentiary issues that were brief, and I didn't want it to seem as if we were not pursuing them. One of them obviously was the large spoliation issue that was pretty fact-intensive. There's a hearsay issue, which the board admitted the court relied on hearsay evidence, but they argued that they didn't actually offer it for the truth of the matter asserted, even though it was heavily part of their undisputed material facts. And lastly, there's an issue as to whether the declarations that were submitted by the plaintiffs and as well as their witnesses were considered, quote-unquote, sham affidavits. And unfortunately, with four seconds left, I really can't get into that, but I did not want it to be lost that those are three issues that we want to proceed. And lastly, the practicum was pulled after an e-mail came from Buzz Williams saying, I heard what Tim said at this parents' meeting, and we need to, quote, find a way to discipline him for what he said. And we specifically put that in the brief as well. Thank you. Thank you all for your argument. The court will come down and greet counsel and proceed to the next case.
judges: James A. Wynn, Jr., Pamela A. Harris, Loretta Copeland Biggs